The STATE of Ohio, Appellee,

v.

FISHER, Appellant.

[Cite as *State v. Fisher,* 148 Ohio App.3d 126, 2002-Ohio-3026.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20701.

Decided June 19, 2002.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Richard S. Kasay, Assistant Prosecuting Attorney, for appellee.

Debra Kanevsky Migdal, for appellant.

SLABY, Presiding Judge.

{¶ 1} Defendant, Darryl Emerson Fisher, appeals from a judgment of the Summit County Court of Common Pleas that convicted him of one count of burglary. We affirm.

{¶ 2} During the early morning hours of May 29, 2000, the home of Phyllis Reitenbach was burglarized. The perpetrator, whom Reitenbach identified to police as a black male wearing dark clothing, fled the scene as she went to call 911. When police arrived, they discovered that the perpetrator had entered the home by breaking a large window and had stepped on a couch cushion, leaving an impression of the tread of his shoe. Police searched the immediate surrounding neighborhood but found no one. A 911 call from a nearby residence led police toward Arlington Street. The police entered a bar located there, Grecco's Tavern, where they found defendant. Defendant matched the general description of the perpetrator, he appeared to have been running, and he had a cut on his hand. The police later observed that the tread on defendant's shoe was

similar to the imprint found at the burglary scene and that there was glass in defendant's shoe.

{¶ 3}  Defendant was charged with burglary, in violation of R.C. 2911.12(A)(2). Although there was no direct evidence that defendant committed the crime, Akron police had gathered a great deal of circumstantial evidence to connect defendant to the crime.  Following a jury trial, defendant was convicted as charged.  He appeals, raising three assignments of error.

## ASSIGNMENT OF ERROR I

{¶ 4}  "The court committed reversible error when it permitted the State to introduce inadmissible hearsay testimony relating to the only contested issue at trial."

{¶ 5}  Defendant assigns error to the trial court's admission of certain evidence, contending that it was inadmissible hearsay.  Defendant's first challenge is to a police officer's testimony about gestures made by another police officer and by the barmaid and patrons at the bar where defendant was apprehended. The testimony indicated that the other officer had pointed toward the bar and that the patrons and the barmaid had looked at defendant when officers came into the bar.  Defendant contends that these gestures amounted to nonverbal hearsay and that testimony about them was inadmissible.

{¶ 6}  Although defendant raised an objection to this officer's testimony on the basis of hearsay, it was directed only to his testimony about the verbal statements of the other officer.  No objection was raised to the testimony concerning the gestures observed by this witness.  Consequently, defendant has waived any error in the admission of this evidence.  *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus.  See, also, Evid. R. 103(A)(1).

{¶ 7}  The second portion of evidence challenged by defendant was the prior consistent statement of Mark Barclay, a patron at the bar who spoke to defendant.  Barclay gave police a written statement and the state sought to admit that statement at the close of its case.  The state asserted, and the trial court agreed, that the statement was admissible pursuant to Evid.R. 801(D)(1)(b), which provides that a prior consistent statement is not hearsay if the declarant testifies at trial and is subject to cross-examination about the statement and the statement "is offered to rebut an express or implied charge against [the declarant] of recent fabrication or improper influence or motive[.]"  Evid.R. 801(D)(1)(b).

{¶ 8}  Barclay did testify during the trial and was subject to cross-examination by defendant.  At the time of trial, Barclay was incarcerated because

he had violated the terms of his parole by his presence in Grecco's Tavern on May 28, 2000. During cross-examination, defense counsel questioned Barclay about his cooperation with the state, suggesting that he was doing so to receive more favorable treatment by the Parole Board. In fact, defense counsel directly asked Barclay whether the prosecutor had agreed to write a letter to the Parole Board on his behalf in exchange for his testimony. Thus, defense counsel essentially accused Barclay of having an improper motive or influence to testify and the prior consistent statement was admissible pursuant to Evid.R. 801(D)(1)(b). See *State v. Pritchard* (Aug. 2, 2001), 8th Dist. No. 78497, 2001 WL 898427. The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶ 9} "The trial court's instruction on 'flight' was erroneous in light of the issue at trial."

{¶ 10} In his second assignment of error, defendant contends that the trial court erred by instructing the jury on flight. He contends that such an instruction was improper in this case because the identity of the perpetrator, the person who ran from the police, was disputed. We need not reach the merits of this argument, however, because defendant failed to preserve this argument for appellate review.

{¶ 11} Crim.R. 30(A) provides:

{¶ 12} "On appeal, a party may not assign as error the giving or the failure to give any [jury] instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

{¶ 13} Although defendant raised an objection to the flight instruction prior to the jury's retiring, he failed to articulate the basis for his objection and there was no discussion on the record about it. Thus, he is precluded by Crim.R. 30(A) from assigning error to the trial court's instruction. Because defendant does not argue that the giving of this instruction constituted plain error, we need not conduct a plain-error analysis. The second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

{¶ 14} "The trial court erroneously denied [defendant's] motion for acquittal."

{¶ 15} In his final assignment of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal pursuant to Crim.R. 29. Initially, we must determine whether defendant has preserved this claim for appellate review. Under Crim.R. 29(A), a defendant must move for

acquittal at the close of the state's case and, if he presents a defense, he must renew his motion at the close of all the evidence. *State v. Miley* (1996), 114 Ohio App.3d 738, 742, 684 N.E.2d 102. Defendant did move for acquittal at each of these points of the trial and, therefore, did all that was required to preserve his challenge to the sufficiency of the evidence against him.

{¶ 16} The state cites three cases from this court in which we stated that, to preserve a challenge under Crim.R. 29(A), a defendant must also move for acquittal under Crim.R. 29(C) after the jury returns a guilty verdict. See *State v. Scruggs* (May 23, 2001), 9th Dist. Nos. 20221 and 20222, at 3, 2001 WL 542325; *State v. Minor* (Nov. 7, 2001), 9th Dist. No. 20504, at 5, 2001 WL 1379448; *State v. Dossie* (Nov. 29, 2000), 9th Dist. No. 19935, at 4, 2000 WL 1752241. Those cases do not reflect a correct interpretation of Crim.R. 29(C). Crim.R. 29(A), by its explicit terms, provides the exclusive vehicle for moving for acquittal during trial. Crim.R. 29(C) provides an avenue for overturning the jury's verdict after trial, something akin to a judgment notwithstanding the verdict in a civil case. The provisions of Crim.R. 29(C) have no bearing on a defendant's rights under Crim.R. 29(A) and to the extent we held otherwise in *Scruggs, Minor,* and *Dossie,* those cases are overruled.[1]

{¶ 17} Thus, we will review defendant's claim on the merits. When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The verdict will not be disturbed unless the reviewing court finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d 492.

■ {¶ 18} Through the testimony of Reitenbach, her 911 call, and the investigation of police officers at the scene and at the bar where defendant was apprehended, the jury had before it the following basic facts about the burglary. During the early morning hours of May 29, 2000, Phyllis Reitenbach was sleeping in her upstairs bedroom when she heard an intruder in her house. She heard a crash and later saw a light on in another bedroom and observed a black male wearing dark clothing. She called 911.

---

1. This court also incorrectly stated the legal standard in *State v. Snider,* 9th Dist. No. 3223–M, 2002-Ohio-1252, at ¶ 8, 2002 WL 432363, and *State v. Turner* (Aug. 23, 2000), 9th Dist. No. 19751, at 4, 2000 WL 1197021, although the incorrect standard had no bearing on the sufficiency analysis in those cases.

{¶ 19}  Akron police officers were dispatched to Reitenbach's residence on Inman Street.  They observed that the perpetrator had broken a window and had stepped on a couch cushion, leaving the impression of his footprint.  The footprint had tread marks in an S-shaped pattern.

{¶ 20}  Akron 911 operators received a related call just eleven minutes after Reitenbach's call came in.  The call came from a home on Concord, which was "right around the corner" from Reitenbach's house.  The caller indicated that a black male with a baseball cap and a dark jacket was walking north up the street trying to open car doors.  She also observed him trying to open the front door of a residence.  She indicated that the man was heading toward Arlington Street.

{¶ 21}  Police officers searched the surrounding neighborhoods and went up to Arlington Street.  They went into a bar there, Grecco's Tavern.  When the uniformed officers entered the bar, all of the patrons except defendant looked up at them.  The patrons and the barmaid then turned their glances toward defendant.  The officers questioned defendant, who insisted that he had been at the bar for a while.  The officers did not believe defendant, however, because he was sweating and out of breath and appeared to have been running.  The officers further observed that the S-shaped tread on defendant's shoes was similar to the imprint left on the couch cushion at the scene of the burglary.  One of defendant's shoes also had glass fragments in it.  When they arrested defendant, the officers further observed that he had a cut on the palm of his hand.

{¶ 22}  Mark Barclay, the patron who had been sitting closest to defendant at the bar, testified that he had been in the bar for approximately fifteen minutes when defendant rushed in, sat next to him, and asked him for a ride.  When defendant put a dollar on the bar, Barclay noticed that he had a piece of glass in his hand.  Defendant told Barclay that he thought the police were chasing him.  Police officers arrived at the bar about three or four minutes later.

{¶ 23}  As defendant repeatedly notes throughout his brief, the only real issue at trial was one of identity.  There is no dispute that a burglary was committed; the only dispute was whether there was sufficient evidence to identify defendant as the perpetrator of that crime.  A rational factfinder, viewing the evidence in a light most favorable to the state, could find that defendant was the perpetrator of the burglary.  The third assignment of error is overruled.

{¶ 24}  Defendant's assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

BAIRD and CARR, JJ., concur.