This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Frank Antoline has appealed from his conviction and sentence in the Lorain County Court of Common Pleas for sexual battery, attempted sexual battery, and gross sexual imposition. This Court affirms.
 I {¶ 2} In October 1999, Appellant was indicted on one count of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(3); one count of rape, in violation of R.C. 2907.02(A)(1)(b); and four counts of GSI, in violation of R.C. 2907.05(A)(4).
 {¶ 3} In June 2000, Appellant filed a motion to suppress the contents of an audio-taped interview between Appellant and a detective of the Lorain County Sheriff's Department. In the motion, Appellant argued that the detective failed to administer Miranda warnings prior to the interview, rendering the admission into evidence of any incriminating statements on the tape violative of his Fifth Amendment rights. After a hearing, the trial court denied the motion on the ground that the interview was not a custodial interrogation, and no requirement that the detective issue Miranda warnings attached.
 {¶ 4} In July 2001, Appellant filed a motion requesting the court to reconsider its order denying the motion to suppress in light of Statev. Petitjean (2000), 140 Ohio App.3d 517, appeal not allowed (2001),91 Ohio St.3d 1480. In the motion for reconsideration, Appellant argued that any waiver of his Fifth Amendment protections against compelled self-incrimination was involuntary because his statements were the product of false promises of leniency by the detective. The trial court granted Appellant's motion to reconsider, and again denied the motion to suppress, finding the circumstances of Petitjean distinguishable.
 {¶ 5} In August 2001, the Lorain County Grand Jury issued a superceding indictment, replacing the charges of the initial indictment with one count of GSI, in violation of R.C. 2907.05(A)(4), and one count of sexual battery, in violation of R.C. 2907.03(A)(3). In January 2002, the grand jury issued a supplemental indictment charging Appellant with one count of attempted sexual battery, in violation of R.C. 2907.03(A)(3) and R.C. 2923.02(A); one count of rape, in violation of R.C. 2907.02(A)(2); and one count of GSI, in violation of R.C. 2907.05(A)(1).
 {¶ 6} In the meantime, Appellant filed several motions, including a motion for a transcript of all witnesses' testimony before the grand jury at the time of each indictment. In the motion, Appellant asserted his belief that there were inconsistencies and contradictions in the testimony presented on each occasion. The court granted Appellant's motion in part, ordering the testimony of the victim, L.C., from each proceeding to be transcribed and transmitted to the court for in camera inspection. After reviewing the testimony, however, the court denied Appellant's motion to examine the transcripts.
 {¶ 7} The matter proceeded to trial on the three counts of the supplemental indictment and the charge of sexual battery set forth in the superseding indictment. At the conclusion of the trial, the jury returned a verdict of not guilty of rape, but guilty of sexual battery, attempted sexual battery, and GSI. The court sentenced Appellant to concurrent terms of imprisonment of four years for sexual battery and fourteen months for GSI. The court did not sentence Appellant for the attempted sexual battery conviction, having determined that that offense was a lesser included offense of sexual battery. The court also conducted a sexual offender classification hearing, following which the court found Appellant to be a sexually oriented offender and gave Appellant notice of his duty to register as such.
 {¶ 8} Appellant has timely appealed, asserting eight assignments of error. We have rearranged and consolidated certain of Appellant's assignments of error to facilitate review.
 Assignment of Error Number One {¶ 9} "THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO SUPPRESS THE STATEMENTS MADE BY [APPELLANT] WHEN INTERROGATED ON JULY 10, 1999, BY THE DETECTIVE DEPUTY SHERIFF, ENTERED OCTOBER 31, 2000."
 {¶ 10} In his first assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress statements made during an interview with Detective Denise Wilms of the Lorain County Sheriff's Department. Appellant has contended that the trial court erroneously concluded that the interview was not a custodial interrogation. According to Appellant, the statements should have been excluded from evidence because the detective failed to advise him of his Miranda rights prior to the interrogation.
 {¶ 11} In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court engages in a two-step inquiry. State v.Evans (2001), 144 Ohio App.3d 539, 549, appeal not allowed (2001),93 Ohio St.3d 1473. First, the appellate court reviews the trial court's findings of fact only for clear error. Id., citing Ornelas v.United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. Accordingly, we will not disturb the trial court's factual findings if some competent, credible evidence to support them appears in the record.State v. Searls (1997), 118 Ohio App.3d 739, 741. "Then, we engage in ade novo review, without deference to the trial court's conclusions, as to whether those properly supported facts meet the applicable legal standards." Evans, 144 Ohio App.3d at 549, citing Ornelas,517 U.S. at 699.
 {¶ 12} The Fifth Amendment to the United States Constitution
provides persons with a privilege against compelled self-incrimination, which is applicable against the states through the Due Process Clause of the Fourteenth Amendment. Malloy v. Hogan (1964), 378 U.S. 1, 6,84 S.Ct. 1489, 12 L.Ed.2d 653. Pursuant to Miranda v. Arizona (1966),384 U.S. 436, 471-472, 86 S.Ct. 1602, 16 L.Ed.2d 694, an individual must be advised of certain constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his freedom in any significant way. Specifically, once police begin a custodial interrogation, they must use procedures to warn the person in custody of his right to remain silent and his right to counsel. Id.
 {¶ 13} The duty to provide Miranda warnings is only invoked when both custody and interrogation coincide. State v. Wiles (1991),59 Ohio St.3d 71, 83, certiorari denied (1992), 506 U.S. 832,113 S.Ct. 99, 121 L.Ed.2d 59. "Custody" for purposes of entitlement to Miranda rights exists only where there is a restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler
(1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275. Whether a suspect is in such custody depends on the facts and circumstances of each case. State v. Warrell (1987), 41 Ohio App.3d 286, 287. The test to be applied to each case is "whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" State v. Gumm (1995), 73 Ohio St.3d 413, 429, certiorari denied (1996), 516 U.S. 1177, 116 S.Ct. 1275, 134 L.Ed.2d 221, quotingUnited States v. Mendenhall (1980), 446 U.S. 544, 554, 100 S.Ct. 1870,64 L.Ed.2d 497 (plurality opinion).
 {¶ 14} In its order denying the motion to suppress, the trial court determined that Appellant's statements to Detective Wilms were not made in a custodial interrogation. Whether an individual is "in custody" is a mixed question of law and fact entitled to independent review.Thompson v. Keohane (1995), 516 U.S. 99, 112-113, 116 S.Ct. 457,133 L.Ed.2d 383. Factual findings regarding the specific circumstances surrounding the interrogation are accorded traditional deference. Id. at 112; State v. Estepp (Nov. 26, 1997), 2nd Dist. No. 16279,1997 Ohio App. LEXIS 5279, at *6-7, appeal not allowed (1998), 81 Ohio St.3d 1467. Consequently, we will not disturb the trial court's factual findings if the record contains competent, credible evidence to support them. Statev. Guysinger (1993), 86 Ohio App.3d 592, 594. The reviewing court must then independently determine whether, given the properly supported historical facts, a reasonable person would have felt at liberty to terminate the interrogation and leave. Thompson, 516 U.S. at 112;Estepp, supra at *7.
 {¶ 15} As the trial court's ruling on Appellant's motion does not contain specific findings of historical fact, we have independently reviewed the record to ascertain whether the court properly determined that Appellant's statements were not made in a custodial interrogation. Detective Wilms, the first witness at the suppression hearing, testified that she initiated contact with Appellant by telephoning his residence in Pennsylvania after learning of L.C.'s allegations from Lorain County Children's Services ("LCCS"). The detective stated that she spoke with Appellant's wife and informed her that she wanted to speak with Appellant, and Appellant and Mrs. Antoline voluntarily came to the sheriff's department to meet with her on a Saturday. The detective testified that she was wearing casual dress rather than a uniform, she was not displaying handcuffs, and she probably carried a weapon that was concealed from view. According to the detective, she met Appellant and his wife in the lobby lounge of the sheriff's department, and told Appellant she would like to speak with him alone.
 {¶ 16} Detective Wilms testified that she used a key to lead Appellant through an interior door that was locked from the outside, but not from the inside, into an interview room. The detective stated that she sat alone in the interview room with Appellant for approximately one hour, and that she did not threaten, handcuff, fingerprint, photograph, or arrest Appellant at any time. At the conclusion of the interview, the detective testified, she granted Appellant's request to allow his wife into the interview room, and told Appellant that she would not arrest him that day but was going to turn over all the evidence to a grand jury. Detective Wilms testified that she did not advise Appellant of his Miranda rights because he was free to leave the interview at any time.
 {¶ 17} Appellant then called his wife to testify at the suppression hearing. According to Mrs. Antoline, Detective Wilms brought her back with Appellant after approximately one hour, and the detective had to unlock the door by "turning the knob" in order for she and Appellant to leave. The state then re-called Detective Wilms, who testified that the door had a latch that had to be pushed down in order to be opened, but did not have a separate lock that turned and did not require the use of a key. The detective stated that people often think that merely pushing on the glass door will open it, and she probably had to open the door for Appellant and his wife when they left.
 {¶ 18} Based on the foregoing testimony, we conclude that the trial court did not err in determining that Appellant was never in custody for purposes of entitlement to Miranda warnings. "`[T]he requirement of warnings [is not] to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" State v. Biros (1997),78 Ohio St.3d 426, 440, quoting Oregon v. Mathiason (1977), 429 U.S. 492,495, 97 S.Ct. 711, 50 L.Ed.2d 714. Based on all the facts and circumstances as demonstrated by the record, a reasonable person in Appellant's position would have felt at liberty to terminate the interview and leave the sheriff's department if he desired to do so. Appellant's first assignment of error is without merit.
 Assignment of Error Number Two {¶ 19} "THE TRIAL COURT ERRED IN DENYING, UPON RECONSIDERATION, [APPELLANT'S] MOTION TO SUPPRESS THE STATEMENTS MADE BY [APPELLANT] WHEN INTERROGATED ON JULY 10, 1999, BY THE DETECTIVE DEPUTY SHERIFF, ENTERED JULY 30, 2001."
 {¶ 20} In his second assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress upon reconsideration, in light of State v. Petitjean (2000),140 Ohio App.3d 517. Appellant has contended that Detective Wilms falsely promised that he would not be prosecuted if he would "accept the officer's description of the alleged events," and that Appellant's statements were therefore extracted involuntarily, in violation of his constitutional rights.
 {¶ 21} Even when Miranda warnings are not required, the Due Process Clause of the Fourteenth Amendment requires the exclusion of confessions that are involuntarily given by an accused. Dickerson v.United States (2000), 530 U.S. 428, 433, 120 S.Ct. 2326,147 L.Ed.2d 405; Evans, 144 Ohio App.3d at 560. The test under this due process analysis is "`whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession. The due process test takes into consideration `the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation.'" (Citation omitted.) Dickerson,530 U.S. at 434, quoting Schneckloth v. Bustamonte (1973), 412 U.S. 218, 226,93 S.Ct. 2041, 36 L.Ed.2d 854. The totality of the circumstances that a court should consider include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155.
 {¶ 22} Appellant has focused on the "existence of inducement" element in arguing that Detective Wilms made false promises that he would be provided "help" or counseling and would not be prosecuted if he told the detective what "the detective want[ed] [Appellant] to say." Appellant has relied on Petitjean in arguing that the detective's deceitful tactics had the intended effect of frightening Appellant and impairing his ability to make a reasoned decision to waive his rights against self-incrimination and continue the interview.
 {¶ 23} In Petitjean, the court explained:
 {¶ 24} "[F]alse promises made by police to a criminal suspect that he can obtain lenient treatment in exchange for waiving hisFifth Amendment privilege so undermines the suspect's capacity for self-determination that his election to waive the right and incriminate himself in criminal conduct is fatally impaired. His resulting waiver and statement are thus involuntary for Fifth Amendment purposes. These issues must be resolved on a totality-of-the-circumstances test, which places both equivocal language and technical possibilities in context."Petitjean, 140 Ohio App.3d at 534.
 {¶ 25} In Petitjean, interrogating officers warned the defendant that he was facing a murder charge and that, if officers had to gather evidence through investigation, "`you go bye-bye for a big long * * * time — for life or you lose your life.'" Id. at 529. The officers promised, on the other hand, that "`if you want to work with us and work with yourself, * * * you'd probably get two years of probation.'" Id. at 530. The Second District Court of Appeals determined that "[t]his specifically conditioned the availability of probation on Petitjean's waiver of his Fifth Amendment privilege. That assurance of leniency was a misstatement of the law that so undermined Petitjean's calculus that it critically affected his capacity for self-determination." Id. at 532.
 {¶ 26} In so holding, the court in Petitjean relied in part onState v. Arrington (1984), 14 Ohio App.3d 111. Petitjean,140 Ohio App.3d at 534. In Arrington, the court of appeals affirmed the suppression of a defendant's statements as involuntary where interrogating officers told one of two co-defendants indicted for aggravated murder that "`if you weren't the one who pulled the trigger * * * it can be probational.'" (Alterations sic.) Arrington, 14 Ohio App.3d at 115. The court found that this and other assurances made by the officers were not only impermissible promises of leniency, but misstatements of the law. Id. at 115-116.
 {¶ 27} In its order denying Appellant's motion to suppress upon reconsideration, the trial court stated that the circumstances of Detective Wilms' interview with Appellant did not rise to the level of interrogation and promises described in Petitjean and Arrington. We agree. At no point during her interview with Appellant did Detective Wilms make any promises of leniency, misstate the law, or intimate that Appellant would not be prosecuted. The detective repeatedly explained to Appellant that her purpose in conducting the interview was to resolve the allegations of abuse made by L.C. Detective Wilms also made reference several times to the fact that both he and the victim may need counseling. The detective did not, however, in any way represent that Appellant 1) would not be prosecuted, 2) would be prosecuted on lesser charges, or 3) would receive a lesser sentence if he offered incriminating statements. On the contrary, Detective Wilms clearly advised Appellant that the matter would be submitted to the prosecutor and the grand jury for a review of any potential charges. Appellant's second assignment of error is not well taken.
 Assignment of Error Number Three {¶ 28} "THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION FOR TRANSCRIPTS OF THE SEVERAL GRAND JURY TESTIMONIES, ENTERED JUNE 10, 2002, T. 1, PP. 60-62."
 {¶ 29} In his third assignment of error, Appellant has argued that the trial court erred in denying his motion to inspect transcripts of witnesses' testimony before the grand jury. Appellant has cited the fact that the first grand jury proceeding resulted in an indictment for rape and other offenses in one time period; the second proceeding resulted in an indictment not including rape in a different time period; and the third proceeding resulted in another indictment which again included rape. Appellant has contended that these variations lead to the conclusion that there were inconsistencies in the testimony presented to the grand jury on each occasion, and Appellant was entitled to bring these inconsistencies to the attention of the jury for purposes of evaluating the credibility of L.C.'s testimony.
 {¶ 30} Whether to release grand jury testimony is within the discretion of the trial court, and a denial of a motion to inspect such testimony will not be reversed absent an abuse of that discretion. Statev. Coley (2001), 93 Ohio St.3d 253, 261. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 31} Crim. R. 6(E) provides that "[a] grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury * * * only when so directed by the court[.]"
 {¶ 32} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." State v. Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus. Generally, a particularized need for the disclosure of grand jury testimony "is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." Id., paragraph three of the syllabus.
 {¶ 33} In the case at bar, Appellant moved for leave to inspect the testimony of all witnesses in each of the three grand jury proceedings. The court granted Appellant's motion in part, ordering that the testimony of L.C. in each of the proceedings be transcribed and submitted to the court for an in camera inspection. After reviewing the transcripts, the court determined that the testimony was not so inconsistent or contradictory that inspection by Appellant's counsel would be appropriate. The court specifically found that the witness did not change her position or her account of the events during the successive grand jury proceedings, but that additional information was elicited because more questions were posed to her at the second and third proceedings.
 {¶ 34} Appellant has failed to show an abuse of discretion by the trial court in reaching this determination. "When a defendant `speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination * * * by revealing contradictions,' the trial court does not abuse its discretion by finding the defendant had not shown a particularized need." (Alterations sic.)State v. Mack (1995), 73 Ohio St.3d 502, 508, certiorari denied (1996),516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d 766, quoting State v. Webb
(1994), 70 Ohio St.3d 325, 337. Appellant's third assignment of error is without merit.
 Assignment of Error Number Four {¶ 35} "THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION PURSUANT TO [CRIM.R. 29] TO ACQUIT [APPELLANT] WITH RESPECT TO THE COUNTS CHARGING `SEXUAL BATTERY' AND `ATTEMPTED SEXUAL BATTERY' [R.C. 2907.03(A)(3)], MADE AT THE CLOSE OF THE [STATE'S] CASE, T.2, PP. 325-335."
 Assignment of Error Number Five {¶ 36} "THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION PURSUANT TO [CRIM.R. 29] TO ACQUIT [APPELLANT] WITH RESPECT TO THE COUNTS CHARGING "GROSS SEXUAL IMPOSITION" [R.C. 2907.05], MADE AT THE CLOSE OF THE [STATE'S] CASE, T. 2, PP. 325-335."
 {¶ 37} In his fourth and fifth assignments of error, Appellant has argued that the trial court erred in denying his Crim. R. 29(A) motion for acquittal on the charges of sexual battery, attempted sexual battery, and GSI. Appellant has contended that the state failed to adduce sufficient evidence from which the jury could have found the essential elements of each charge proven beyond a reasonable doubt.
 {¶ 38} However, "[a] defendant who is tried before a jury and brings a Crim. R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." State v. Miley (1996), 114 Ohio App.3d 738, 742, appeal not allowed (1997), 77 Ohio St.3d 1548; State v. Fisher,148 Ohio App.3d 126, 129-130, 2002-Ohio-3026, ¶ 15.
 {¶ 39} After thoroughly reviewing the record, we must conclude that Appellant has failed to preserve any objection to the sufficiency of the evidence. Appellant timely entered a motion for acquittal at the close of the state's case, but failed to renew the motion at the close of all the evidence. Consequently, Appellant has waived any objection to the sufficiency of the evidence, and we need not further consider these assignments of error.
 Assignment of Error Number Six {¶ 40} "THE VERDICT OF `GUILTY' WITH RESPECT TO THE COUNTS CHARGING `SEXUAL BATTERY' AND `ATTEMPTED SEXUAL BATTERY' [R.C. 2907.03(A)(3)], WAS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 41} In his sixth assignment of error, Appellant has argued that his convictions for sexual battery and attempted sexual battery are against the manifest weight of the evidence. Appellant has contended that an essential element of the statute under which he was convicted for sexual battery and attempted sexual battery is that the victim is "unaware" that sexual contact is occurring. Appellant has maintained that the only evidence on the "awareness" element was L.C.'s own testimony that she was aware that sexual contact was occurring, and the jury's conclusion beyond a reasonable doubt that L.C. was unaware is against the manifest weight of the evidence.
 {¶ 42} In determining whether a conviction is against the manifest weight of the evidence, this Court must:
 {¶ 43} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 44} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 45} L.C. testified that Appellant was a family friend from Pennsylvania who was an overnight guest at the home of L.C.'s parents one night in the summer or fall of 1996, on the night of a retirement party for her grandfather. L.C. testified that after the party, she was on a couch in the living room watching television when Appellant sat on the couch by her feet. L.C. stated that Appellant began rubbing her feet, then continued rubbing her legs, and eventually pulled aside her shorts and underclothes and began rubbing her vaginal area with his hand. L.C. testified that she pretended to be asleep during this time because she was afraid. L.C. further testified that Appellant then removed his penis from his pants and rubbed it on her feet. L.C. stated that at one point while he was rubbing his penis on her feet, Appellant stopped very quickly because it sounded like L.C.'s parents were coming out of their adjacent bedroom. L.C. testified that she then "pretended to turn over," but Appellant would "rock [her] back to a position" from which he could continue to touch her. Finally, L.C. testified, Appellant sat up on the couch, repositioned her legs, and placed his lips on her vagina. L.C. stated that after this happened, Appellant went to bed. L.C. testified that in 1999 she told her pastor about the abuse, and her pastor immediately informed LCCS.
 {¶ 46} The statute in effect at the time of the sexual battery and attempted sexual battery offenses of which Appellant was indicted and convicted provided:
 {¶ 47} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 48} "* * *
 {¶ 49} "(3) The offender knows that the other person submits because he or she is unaware that the act is being committed." R.C. 2907.03(A)(3).
 {¶ 50} "Sexual conduct," for purposes of R.C. 2907.03(A)(3), includes "cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another." R.C. 2907.01(A).
 {¶ 51} Appellant has argued that the victim's unawareness is an essential element of R.C. 2907.03(A)(3) that must be proven beyond a reasonable doubt. Since the only evidence regarding L.C.'s awareness was that she was aware that the acts of sexual conduct were being committed, Appellant has maintained, the jury acted contrary to the manifest weight of the evidence in finding him guilty of this charge.
 {¶ 52} Appellant's position that R.C. 2907.03(A)(3) requires proof that the victim is subjectively unaware, however, fails to give effect to that statute's focus on what "[t]he offender knows" concerning the victim's submission because of unawareness. (Emphasis added.) R.C. 2907.03(A)(3). In other words, Appellant would be correct that a conviction requires proof that the victim submitted because he or she was subjectively unaware that the offender was engaging in sexual conduct if the General Assembly had not included "the offender knows that" as an essential element of the offense. The legislature's inclusion of this additional element, however, compels us to focus on the evidence adduced to prove that Appellant knew that L.C. submitted because she was unaware that the acts are being committed.
 {¶ 53} R.C. 2901.22(B) defines the culpable mental state of knowingly: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstanceswhen he is aware that such circumstances probably exist." (Emphasis added.) Tracking the relevant jury instruction, 4 OJI 409.11, the trial court in the instance case charged the jury:
 {¶ 54} "Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that the other person was unaware that the crime of sexual battery was being committed."
 {¶ 55} We appreciate that, in many prosecutions under R.C. 2907.03(A)(3), the testimony establishes that the victim was either asleep or unconscious, and awakened to discover the offender engaging in sexual conduct with him or her. See, e.g., State v. Green, 5th Dist. No. 01CA-A-12-067, 2002-Ohio-3949, ¶ 28-29; State v. Macht (June 11, 1999), 1st Dist. No. C-980676, 1999 Ohio App. LEXIS 2656, at *4-5, appeal not allowed (1999), 87 Ohio St.3d 1418; State v. Collins (Sept. 22, 1995), 4th Dist. No. 94CA1639, 1995 Ohio App. LEXIS 4409, at *17, appeal not allowed (1996), 74 Ohio St.3d 1510. In such cases, the offender's knowledge that the victim submits because of his or her unawareness is inferred from the victim's testimony that, initially, he or she was subjectively in a state of unawareness (e.g., sleep or unconsciousness), during which the offender initiated and engaged in sexual conduct. However, the offender's requisite mental state can also be established through other evidence that the offender was aware of the probability that the victim was submitting because of unawareness — including the victim's testimony that he or she pretended to be, rather than actually was, asleep while the sexual conduct was occurring. In such a case, the fact that the offender may ultimately have been wrong about the victim's state of awareness does not preclude prosecution under R.C. 2907.03(A)(3).
 {¶ 56} In the instant case, L.C. testified that she was aware that Appellant was committing the acts of sexual conduct, but she pretended to be asleep during their commission because she was afraid. She further testified that "if it looked like I was waking up, [Appellant] would continue to rub and act like he was just rubbing my leg." Appellant initially told Detective Wilms that he remembered sitting with L.C. and rubbing her legs, but he could not recall if he touched or kissed her vagina or rubbed his penis on her leg. Later, at trial, Appellant denied that any sexual conduct had occurred. The jury was entitled to find L.C.'s testimony more credible than Appellant's, and to conclude that Appellant was aware of the probability that L.C. was submitting to his sexual conduct because she was asleep.[1] See State v. DeHass (1967),10 Ohio St.2d 230, paragraph two of the syllabus ("The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts.") Consequently, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice in finding Appellant guilty of sexual battery in violation of R.C. 2907.03(A)(3) and attempted sexual battery in violation of R.C. 2907.03(A)(3) and R.C. 2923.02(A). Appellant's sixth assignment of error must fail.
 Assignment of Error Number Seven {¶ 57} "THE VERDICT OF `GUILTY' WITH RESPECT TO THE COUNT CHARGING `GROSS SEXUAL IMPOSITION' [R.C. 2907.05], WAS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 58} In his seventh assignment of error, Appellant has argued that his conviction for GSI was against the manifest weight of the evidence. Specifically, Appellant has argued, there was no evidence that he compelled L.C. to submit by force or threat of force, and there was no evidence that any touching of L.C. was for the purpose of sexual arousal or gratification.
 {¶ 59} Appellant was indicted and convicted for GSI in violation of R.C. 2907.05(A)(1), which provides:
 {¶ 60} "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 61} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 62} We will first address Appellant's contention that the jury's conclusion that any touching of L.C. was "for the purpose of sexually arousing or gratifying either person" was contrary to the weight of the evidence. Appellant has pointed out that neither he nor L.C. testified about any sexual gratification, and that the state was therefore required to prove this element by circumstantial evidence. Further, Appellant has conceded that L.C.'s testimony that Appellant placed his mouth on her vagina would constitute such circumstantial evidence if it had been believed by the jury, but has asserted that the jury did not believe this testimony because Appellant was found not guilty of rape.
 {¶ 63} In our discussion of Appellant's sixth assignment of error, we rejected his assertion that his acquittal on the charge of rape demonstrates that the jury disbelieved L.C.'s testimony. Moreover, the statute under which Appellant was indicted for rape provides, in part that, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender[.]" "Sexual conduct," in turn, is defined as including intercourse, fellatio, and cunnilingus. R.C. 2907.01(A). GSI, on the other hand, requires only sexual contact, which is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 64} This Court has previously explained that, in the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." State v. Cobb (1991), 81 Ohio App.3d 179,185. In the case at bar, L.C. testified that Appellant rubbed her vagina with his hand and rubbed his penis on her leg, in addition to placing his mouth on her vagina. Accordingly, the jury did not create a manifest miscarriage of justice in inferring that Appellant caused the touching of these erogenous zones for the purpose of sexual arousal or gratification.
 {¶ 65} Appellant has also contended that the jury acted contrary to the manifest weight of the evidence in concluding that Appellant compelled L.C. to submit by force or threat of force. Appellant has argued that the force element set forth in R.C. 2907.05(A)(1) requires the threat or use of physical force against a victim, and no such evidence was adduced at trial.
 {¶ 66} For purposes of the Ohio Revised Code, force "means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). One court has found that, where an offender backed the victim against the wall and fondled her breasts, the offender's "act of placing his arms such that [the victim] could not move away from him constituted force within the meaning of R.C. 2907.05(A)(1) and R.C. 2901.01(A)(1)." State v. Birkman (1993),86 Ohio App.3d 784, 788. Another appellate court determined that a jury's finding of force was not against the manifest weight of the evidence where the offender rubbed his penis on her leg and rubbed her chest, while laying on top of the victim and holding her shoulders. State v.Harrel (Jan. 3, 2000), 5th Dist. No. 99CAA03013,2000 Ohio App. LEXIS 38, at *10-11. Furthermore, a victim need not prove that he or she physically resisted the offender in a prosecution for GSI. R.C. 2907.05(C).
 {¶ 67} In the case sub judice, L.C. testified that she attempted to pretend to turn over in her sleep to prevent Appellant from touching her, but Appellant "would rock me back to a position" in which he could continue the touching. When asked to be more specific, L.C. stated that Appellant would place "one hand on my ankle and one hand on my knee, and then he would move my leg to a position[.]" Shortly thereafter, L.C. testified, Appellant pulled away her shorts and underclothes and touched her vagina with his lips.
 {¶ 68} In light of the foregoing testimony, we cannot conclude that the trial court lost its way or created a manifest miscarriage of justice in finding that Appellant purposely compelled Appellant to submit to sexual contact by force. Appellant's seventh assignment of error is not well taken.
 Assignment of Error Number Eight {¶ 69} "THE TRIAL COURT ERRED IN SENTENCING [APPELLANT] TO A TERM OF IMPRISONMENT IN DISREGARD OF THE SENTENCING GUIDELINES OF [R.C. 2929.12] AND [R.C. 2929.13], T.2, PP. 541-543."
 {¶ 70} In his eighth assignment of error, Appellant has argued that the trial court erred in sentencing him to a prison term of more than the minimum for the most serious charge of which he was convicted. Appellant has also contended that the court failed to abide by the sentencing guidelines set forth at R.C. 2929.12 and R.C. 2929.13.
 {¶ 71} An appellate court may remand a matter on appeal for resentencing if it clearly and convincingly finds that the court's findings are unsupported by the record or that the sentence imposed by the trial court is otherwise contrary to law. R.C. 2953.08(G)(2). Clear and convincing evidence is evidence "which will produce * * * a firm belief or conviction as to the allegations sought to be established."State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 72} The sexual battery offense of which Appellant was convicted is a felony of the third degree. R.C. 2907.03(B). Pursuant to R.C. 2929.13(C), the trial court was required to comply with the principles and purposes of sentencing set forth at R.C. 2929.11 and with R.C. 2929.12
in determining whether to impose a prison term as a sanction for Appellant's sexual battery conviction.
 {¶ 73} The GSI offense of which Appellant was convicted is a felony of the fourth degree. R.C. 2907.05(B). Consequently, the court was required to determine whether any of the factors set forth at R.C. 2929.13(B)(1) applied. R.C. 2929.13(B)(1). The transcript of the sentencing hearing shows that the trial court conducted the R.C. 2929.13(B)(1) analysis, and determined that the factor set forth at division (B)(1)(f) of that section applies, which provides: "The offense is a sex offense that is a fourth or fifth degree felony violation of * * * [R.C. 2907.05][.]"
 {¶ 74} Having made the R.C. 2929.13(B)(1)(f) finding, the court was required to impose a prison term upon Appellant if the court found 1) that a prison term was consistent with the purposes and principles of sentencing set forth at R.C. 2929.11, after considering the factors set forth at R.C. 2929.12, and 2) found that Appellant was not amenable to an available community control sanction. R.C. 2929.13(B)(2)(a). Again, the transcript of Appellant's sentencing hearing demonstrates that the court properly conducted an inquiry into the seriousness and recidivism factors set forth at R.C. 2929.12. Specifically, the court found three factors indicating that Appellant's conduct was more serious than conduct normally constituting the offense: 1) the physical or mental injury to L.C. was exacerbated by L.C.'s physical or mental condition or age; 2) L.C. suffered serious physical, psychological, or economic harm as a result of the offense; and 3) Appellant's relationship with L.C. facilitated the offense. R.C. 2929.12(B)(1), (2), and (6). The court also found one factor indicating that Appellant's conduct was less serious than conduct normally constituting the offense: in committing the offense, Appellant did not expect or cause to expect physical harm to any person or property. R.C. 2929.12(C)(3). The court then found one factor indicating that Appellant is likely to commit future crimes: Appellant showed no genuine remorse for the offense. R.C. 2929.12(D)(5). Finally, the court found three factors indicating that Appellant is not likely to commit future crimes: 1) Appellant had not been adjudicated a delinquent child prior to committing the offense; 2) Appellant had no prior convictions at the time of the offense; and 3) Appellant had led a law-abiding life for a significant number of years prior to committing the offense. R.C. 2929.12(E).
 {¶ 75} Based upon its consideration of all these factors, the trial court then determined that Appellant was not amenable to a community control sanction, and a prison sanction was appropriate. Our review of the record of the proceedings at the sentencing hearing shows no error by the trial court in complying with the sentencing guidelines set forth at R.C. 2929.12 and R.C. 2929.13.
 {¶ 76} Appellant has also contended that the trial court erred in imposing a prison term of more than the minimum prescribed by statute. As Appellant had not previously served a prison term, the trial court was required to impose the shortest prison term authorized for the offense unless the court made certain specific findings on the record. R.C. 2929.14(B). Our review of both the transcript of the sentencing hearing and the trial court's journal entry of sentence shows that, in both places, the trial court specifically found that imposing the minimum prison sentence would demean the seriousness of Appellant's conduct. See. R.C. 2929.14(B). Consequently, the trial court did not err in sentencing Appellant to serve prison terms in excess of the statutory minimums for each offense.
 {¶ 77} The trial court did not err in applying the sentencing guidelines at R.C. 2929.12 and R.C. 2929.13, or in sentencing Appellant to prison terms greater than the shortest terms authorized for each offense. Appellant's eighth assignment of error is not well taken.
 III {¶ 78} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J., CARR, J. CONCUR.
[1] Appellant has contended that the jury must have disbelieved L.C.'s testimony about Appellant's sexual conduct because he was acquitted of the charge of rape. This argument, however, has been cogently analyzed and rejected by the Fourth District Court of Appeals in State v. Collins
(Sept. 22, 1995), 4th Dist. No. 94CA1639, 1995 Ohio App. LEXIS 4409, at *9-10 ("Inconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support the guilty verdict.").