[Cite as *State v. Walker*, 2017-Ohio-7236.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.   28244 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CORDELL WALKER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.   CR 2015 08 2626 |

DECISION AND JOURNAL ENTRY

Dated: August 16, 2017

CARR, Judge.

{¶1}  Defendant-Appellant Cordell Walker appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}  Around 1 a.m. on August 16, 2015, at a gas station in Akron, Walker shot the victim in his left and right arms and abdomen.  Based upon that incident, Walker was indicted on two counts of felonious assault, with accompanying firearm specifications, and one count of having weapons while under disability.  The matter proceeded to a jury trial, at which Walker maintained he acted in self-defense and/or in defense of others.  The trial court instructed the jury concerning the affirmative defenses of self-defense and defense of others with respect to the two counts of felonious assault, but not with respect to the charge of having weapons while under disability.  The jury found Walker not guilty of the second count of felonious assault, but guilty of the first count of felonious assault and the accompanying firearm specification, and the

count for having weapons while under disability. The trial court concluded the two counts merged and sentenced Walker to an aggregate sentence of nine years in prison for the felonious assault charge and the accompanying firearm specification.

{¶3} Walker has appealed, raising two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

MR. WALKER'S CONVICTION FOR FELONIOUS ASSAULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, MERITING A NEW TRIAL.

{¶4} Walker argues in his first assignment of error that his conviction for felonious assault is against the manifest weight of the evidence. Specifically, he asserts that the weight of the evidence supported his contention that he acted in self-defense. We do not agree.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶5} Walker was found guilty of violating R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *[.]" Walker did not

dispute that he shot the victim. Instead, he contends on appeal that the weight of the evidence supports that he acted in self-defense.

**{¶6}** Walker had the burden to demonstrate by a preponderance of the evidence that he acted in self-defense when he shot the victim. *State v. Williford*, 49 Ohio St.3d 247, 249 (1990). In order to prove self-defense, a defendant must demonstrate:

> "'(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'"

*State v. Osborne,* 9th Dist. Summit No. 27563, 2016-Ohio-282, ¶ 6, quoting *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326 (1997). "The elements of self-defense are cumulative. * * * If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Internal quotations and citations omitted.) *Osborne* at ¶ 6.

**{¶7}** Here, the jury was presented with different versions of the events. After carefully reviewing the record, we cannot say the jury lost its way in finding Walker guilty of felonious assault.

**{¶8}** During the evening of August 15, 2015, the victim had been drinking with Taylor, who was the mother of his children, and Taylor's sister. Sometime late in the evening, the three got into a car and went and picked up the victim's longtime friend, India, and India's best friend, in order to give them a ride home. Taylor drove and her sister was in the front passenger seat. The victim, India, and India's friend were in the backseat. Prior to dropping India and India's friend off, Taylor drove to a gas station in Akron in order to purchase liquor after hours. There was testimony that members of the group had done so before.

{¶9}    That evening, Walker went to the gas station to get some juice, and, while he was there, the gas station store employee asked him to help out at the drive-thru window, which Walker agreed to do. According to Taylor, when she drove up to the drive-thru window and asked for a bottle of liquor, Walker was at the window and began flirting with her and telling her that she could have whatever she wanted for free. According to Walker, he asked the store employee whether they had any liquor and the store employee said that they did not. Taylor, however, testified that the gas station store manager was willing to sell the liquor, but after talking to Walker, he changed his mind. The victim and Walker argued. The victim got out of the car and approached the window. According to Walker, the victim was poking Walker and ultimately spit at Walker. Walker also asserted that the victim had a gun while in the driver-thru. The store employee's testimony corroborated that the victim spit on Walker and that the victim had a gun, which he kept slapping. The store employee told the store manager about the weapon. The victim denied having a gun at all that evening, and the women in the car with him denied seeing him with a gun. However, Taylor's sister testified that she saw Walker with a gun while he was in the gas station and India testified that, while they were still at the drive-thru window, she saw the store manager hand the store employee a gun, who then handed the gun to Walker.

{¶10}  The yelling at the window drew the attention of the store manager, who came to the window, told Walker and the people in the car to leave, and closed the window. However, Taylor's sister testified that the store manager told her that one of the women in the car could come in and buy something.

{¶11}  Taylor pulled the car around and parked near one of the pumps. Taylor's sister went into the store, and as she was doing so, Walker and the store employee came out. The testimony concerning what happened over the next few minutes varied from witness to witness.

{¶12} In addition to Walker and the victim, Taylor and the store manager witnessed the shooting. The store employee witnessed the events leading up to the shooting, but did not actually see who shot whom. India and India's friend fled from the vehicle before the shooting, shortly after seeing Walker with a gun when he was leaving the store. According to India's friend, she heard the gunshots as she was running from the scene. However, India did testify that, as they were running, she would turn back periodically and saw Walker pointing a gun at the victim. India averred that the victim did not have a gun on him. Taylor's sister testified that, as she walked in the store, she saw Walker pick up a gun and walk out. She did not realize it was a gun until later. Shortly thereafter, she heard gunshots and hid. When the store manager came back into the store with a gun, Taylor's sister ran out of the store.

{¶13} Taylor testified that Walker came out of the store towards the car asking where the victim was in a taunting manner. The victim got out of the car expecting there to be a fistfight. Taylor indicated that Walker then pulled out a gun and the victim put his hands up. Walker took aim at the victim and the victim grabbed the store employee and ducked behind the store employee to use him as a shield. The store employee told the victim that he would get the gun if the victim let him go. The victim did so, but the store employee did not get the weapon. The victim grabbed at the store manager but the store manager pulled away. Walker then shot the victim.

{¶14} The victim confirmed much Taylor's version of events. When Taylor's sister went in the store, he heard Walker yelling at him and thought there was going to be a fistfight. He approached Walker with his fists raised and then saw that Walker had a gun. The victim testified that he did not have a gun or indicate that he had one. The victim testified that he was afraid and tried to use both the store employee and manager as shields and kept telling them to

get the gun from Walker. He indicated that the store manager's shirt ripped when the store manager pulled away. The victim then grabbed the store employee, and, once he let go of the store employee, Walker said, "I got you now[.]" Walker then shot the victim.

{¶15} The store manager testified that he could not remember many of the details of that night. He stated that, shortly after he told the victim and Walker to leave, he heard screaming outside the store. The store manager went outside and saw Walker and the victim were arguing. The victim grabbed the store manager from behind and the store manager felt something pinching him on the back. The victim tore the store manager's shirt and the store manager got away. When the store manager looked back, he saw something black in the victim's hand that looked like a gun. He heard the shots but initially testified that he did not see who shot whom. However, he later testified that he thought Walker shot the victim and ultimately told police the same. The store manager took the gun, which was the store's gun, from Walker and put it in the tank of the toilet so no one else would use it. The store manager testified that, when initially questioned by police, he did not tell the truth as he was afraid of retaliation. He initially denied handling the gun after the shooting, but later that night revised his statement and told police where to find the gun. The weapon was recovered from the toilet tank.

{¶16} The store employee testified that he routinely carried the store's gun on his person and had it on him the night of the shooting. After the store manager closed the window, the store employee walked out with Walker and saw Taylor's sister get out of the car and then the victim. The store employee saw a gun on the victim's person. The victim was yelling and the store employee told Walker that it was not worth it, but the victim kept egging Walker on and calling him names. The victim and Walker began yelling at each other. The victim began tapping on his gun and Walker pulled the gun from the store employee's person. The store employee and

Walker kept telling the victim to get in his car and leave. The store employee kept trying to diffuse the situation, inserting himself between Walker and the victim and sometimes holding Walker back. The victim kept asking the store employee not to let Walker kill the victim and Walker stated that, "As long as you don't reach for the gun, nobody is going to shoot." Walker was then aiming the gun at the victim and telling him to get in the car. According, to the store employee, at this point, the victim still had not pulled out his own weapon, although he kept tapping it. The victim then used the store employee as a shield. The store employee broke free and then heard Walker yell, "He's about to shoot." The store employee then heard gunshots but did not see who shot whom. Neither the store employee nor the store manager told police about the victim having a gun.

{¶17} Walker testified in his own defense. He testified that he shot the victim because he was afraid for his own life and for the lives of those around him. When he walked out of the store, he was planning to leave and did not have a gun. However, then he saw the car pull around and the victim get out of the car. He indicated that he thought that, since the victim had a gun and came to the front of the gas station after being told to leave, the victim came back "to do something." He believed that the store employee and store manager were in danger as well.

{¶18} The victim and Walker started yelling at each other and the store employee started pushing Walker and trying to hold him back. Walker testified that when he saw the victim grab for his gun, Walker grabbed the gun off the store employee. Walker raised the gun and pointed it at the victim when the victim dropped his hand towards his gun. He told the victim, "Don't grab that gun." Walker then kept telling the victim to get in the car and leave. Walker also confirmed that the victim had grabbed both the store manager and the store employee. After the store employee broke away from the victim, Walker looked back at the victim and saw the victim

pulling the gun off of him. Walker averred that the only reason he shot was that he saw that the victim "took the gun off his waist and [] began to raise his gun up." Walker felt that he was about to be shot and so fired his own weapon and then fled.

{¶19} As he was fleeing, he encountered a family acquaintance who drove him to his girlfriend's house. The acquaintance testified to being at the gas station and seeing a dark-skinned male pull a gun from his waistband. She then noticed that Walker was also there in the vicinity. When she heard shots she became concerned Walker was shot, but later realized that he had not been injured. When Walker got to his girlfriend's house, she had been cleaning the house. He testified that he washed his face and used the water she had been cleaning with to wash his hands. He denied that his intention was to destroy evidence.

{¶20} Ultimately, police arrived at his girlfriend's house and began surveilling the property. When family members of Walker arrived the police asked one of them to call and ask Walker to surrender himself. He willingly came out. Upon searching the premises, police noticed a strong odor of bleach in the house and at least one officer testified that Walker's hands smelled like bleach. When interviewed by police, Walker indicated he was home all night. Particles highly indicative of gunshot residue primer were found on Walker's hands.

{¶21} Two security videos from the gas station were also played for the jury and admitted into evidence. Each video depicts a different angle of the scene and contains the footage of the argument outside at the gas station. No footage from the drive-thru window was available. The sum of the two videos depicts Walker storming out of the gas station store as the store employee holds the door open for Taylor's sister to enter the store. At that point, the victim had already exited the car and was near the pumps. The store employee and store manager follow after Walker and the victim moves behind one of the cars. The store employee appears to

be trying to keep Walker from going towards the victim. Taylor exits the vehicle and India and India's friend are seen running from the scene. The victim is then standing with a vehicle between him and Walker. The victim appears to yell something, hits the car, and gestures in Walker's general direction and then moves around the car. The victim appears to try to move towards Walker and the store manager intervenes. At this point, Taylor has reentered the vehicle and begins to drive around the station to where the argument is moving. The victim then grabs the store employee and appears to use him as a shield. The argument then partially moves out of view, but near the end, Walker can be seen pointing and firing a weapon. It then appears that Walker and the store manager exchange something.

{¶22} From the videos it cannot be seen whether the victim had a weapon or when Walker acquired a weapon. However, it does appear from the videos that, at the beginning, Walker exited the store in an aggressive, motivated manner and that the store employee was trying to stop Walker from continuing towards the victim.

{¶23} After a thorough review of the entire record, we cannot say the jury lost its way in finding Walker guilty of felonious assault. The jury was presented with competing versions of the events and was in the best position to make credibility determinations. *State v. Stark*, 9th Dist. Wayne No. 14AP0050, 2017-Ohio-873, ¶ 20. If the jury believed the victim's version of events, the evidence would not support that Walker acted in self-defense; according to the victim, he did not have a gun, and Walker thus shot an unarmed man. Walker's conviction for felonious assault is not against the manifest weight of the evidence simply because the jury chose to believe the victim's version of the events. *Id.* Given the evidence before it, the jury was free to reject that Walker acted in self-defense.

{¶24} Walker's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN NOT GIVING THE JURY AN INSTRUCTION ON SELF DEFENSE AS TO COUNT 3, HAVING A WEAPON UNDER DISABILITY.

{¶25} Walker argues in his second assignment of error that the trial court erred in failing to give a self-defense instruction with respect to the count for having weapons while under disability. Under the circumstances of this case, we do not agree.

{¶26} Crim.R. 30(A) provides in part:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. * * * On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Thus, "'[g]enerally, a request for a special jury instruction must be made in writing.'" *State v. Bellomy,* 9th Dist. Summit No. 12CA0075-M, 2013-Ohio-3187, ¶ 6, quoting *State v. Yates*, 9th Dist. Summit No. 21239, 2003-Ohio-2956, ¶ 18, citing *State v. Franklin*, 62 Ohio St.3d 118, 128 (1991).

{¶27} Here, Walker's counsel objected to the trial court's decision to include a sentence in the instructions that stated that "[t]he previously given instructions regarding self-defense and defense of another do not apply to Count Three [having weapons while under disability]." The trial court went on to clarify that earlier, off the record, Walker's counsel objected to the trial court's conclusion that self-defense and defense of others were not applicable to a charge of having weapons while under disability. The trial court noted that "[t]here was some discussion regarding the arguable applicability of the [S]econd [A]mendment to the defendant's right to

take hold of a weapon at hand in a situation which he was engaged in a self-defense activity." The trial court then concluded that "the defense of self-defense is not applicable to the weapon under disability charge, and [] overrule[d] any request of the defense related to the applicability of the [S]econd [A]mendment under those circumstances." This Court has not yet been faced with a scenario requiring us to expressly adopt or reject the position that self-defense applies to a charge for having weapons while under disability. *See State v. Smead,* 9th Dist. Summit No. 24903, 2010-Ohio-4462, ¶ 12 ("Even if we were to agree with Smead's contention that an individual has an inalienable right of self-defense in his home that could qualify as a defense to the charge of having a weapon under disability, we conclude that the trial court did not err by so failing to instruct the jury."); *State v. Dossie,* 9th Dist. Summit No. 19935, 2000 WL 1752241, *2 (Nov. 29, 2000), *overruled on other grounds*, *State v. Fischer*, 148 Ohio App.3d 126, 2002-Ohio-3026, ¶ 16 (9th Dist.) (noting that this Court has never explicitly recognized the self-defense exception to R.C. 2923.13 outlined in *State v. Hardy,* 60 Ohio App.2d 325 (8th Dist.1978)). Under the circumstances of this case, we likewise do not have to do so in this instance.

{¶28} Even if we were to adopt the position that self-defense could be applicable to a charge for having weapons while under disability, Walker's counsel's proposed instruction for self-defense/defense of others for the charge for having weapons while under disability is not in the record. While it is possible that Walker's counsel sought to have the instruction that was given for counts one and two given for count three, from the trial court's summary of the off-record discussion, it appears that Walker's counsel also sought to have language about the Second Amendment included in the proposed self-defense instruction with respect to count three. Without the proposed instruction in the record, we cannot evaluate whether the instruction would

have been appropriate. Thus, even if this Court were to disagree with the trial court that self-defense can be applicable to a charge for having weapons while under disability, absent being able to review the proposed instruction, we cannot say the trial court committed reversible error in declining to give any instruction on the issue. *See Bellomy* at ¶ 8 (concluding that without the proposed instruction in the record, the Court could not determine that the trial court committed reversible error in failing to give the instruction).

{¶29} Walker's second assignment of error is overruled.

III.

{¶30} Walker's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

THOMAS M. DICAUDO and BENJAMIN R. SORBER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.