[Cite as *State v. Garrett*, 2018-Ohio-1368.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28638 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| RICHARD P. GARRETT | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-10-3710 |

DECISION AND JOURNAL ENTRY

Dated: April 11, 2018

CARR, Judge.

{¶1} Defendant-Appellant Richard Garrett appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Following an altercation with his former girlfriend's boyfriend, Garrett was indicted on two counts of felonious assault. The first count alleged that Garrett knowingly caused serious physical harm to the victim and the second alleged that he knowingly caused or attempted to cause physical harm to the victim by means of a deadly weapon. The matter proceeded to a jury trial, at which Garrett raised the affirmative defense of self-defense. The jury found Garrett not guilty of felonious assault as charged in count two of the indictment but guilty with respect to felonious assault as charged in count one of the indictment. The trial court sentenced Garret to three years in prison.

{¶3} Garrett has appealed, raising a single assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

GARRETT'S FELONIOUS ASSAULT CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND MUST BE REVERSED.

{¶4} Garrett argues in his sole assignment of error that his conviction for felonious assault was against the manifest weight of the evidence. In so doing, he focuses on the fact that the jury found him guilty of knowingly causing serious physical harm but not guilty of knowingly causing or attempting to cause physical harm with a deadly weapon. However, "[Garrett] has not separately argued that the trial court erred by accepting inconsistent jury verdicts, so our consideration of this argument is limited to whether it bears on the weight of the evidence. It does not." *State v. Phillips*, 9th Dist. Summit No. 27552, 2017-Ohio-1186, ¶ 20.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶5} Garrett was found guilty of violating R.C. 2903.11(A)(1). R.C. 2903.11(A)(1) states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a

certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

"Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶6} At trial, Garrett asserted that he acted in self-defense. Garrett had the burden to demonstrate by a preponderance of the evidence that he acted in self-defense. *State v. Walker,* 9th Dist. Summit No. 28244, 2017-Ohio-7236, ¶ 6. "In order to prove self-defense, a defendant must demonstrate: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." (Internal quotations and citations omitted.) *Id.* "The elements of self-defense are cumulative. * * * If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." *Id.* "[I]n general, one may use such force as the circumstances require to protect

oneself against such danger as one has good reason to apprehend." (Internal quotations and citations omitted.) *State v. Hamrick*, 9th Dist. Lorain No. 09CA009628, 2010-Ohio-3796, ¶ 13.

{¶7} Garrett and the victim's girlfriend are the biological parents of a daughter, R.C. On October 26, 2016, the victim and his girlfriend drove to Garrett's mother's house, where Garrett was living, to pick up R.C. The victim was driving and his girlfriend was a passenger. The victim was aware that Garrett did not want the victim at Garrett's mother's house. The victim parked the vehicle on the street near Garrett's mother's house and the victim's girlfriend went to get R.C. At the time, Garrett was not home. However, Garrett arrived home while the victim's girlfriend was still at the house. At trial, the State and Garrett presented evidence supporting conflicting narratives with respect to the events that followed.

{¶8} According to the victim's girlfriend, as she was walking back to the car, Garrett asked to say goodbye to R.C. The victim testified that his girlfriend was at the car at that time and had the car door open. Garrett picked up R.C. and began to ask the victim's girlfriend about her previously being late picking up R.C. and questioning the victim's involvement in parenting related issues. The victim's girlfriend indicated that she did not want to talk to Garrett about that, particularly in front of R.C. Garrett refused to give R.C. to the victim's girlfriend and was insistent about wanting to address "that situation." The victim's girlfriend described Garrett as aggressive and angry.

{¶9} At that point, the victim got out of the car and began to explain to Garrett that the victim had previously apologized about being late and reiterated why they had been late. The victim's girlfriend indicated that the victim was not "upset or anything." According to the victim, Garrett then set R.C. down and began attacking the victim. The victim's girlfriend was surprised by the assault. The victim thought that Garrett was punching him but came to realize

that Garrett had a knife. The victim turned and ran but fell twice and then Garrett was on top of him and continued to stab the victim. The victim was able to get up and began to run away but Garrett pursued him. Ultimately, the victim outran Garrett and the victim's girlfriend picked up the victim, called 911, and drove the victim to the hospital. The victim's girlfriend's 911 call was played for the jury.

{¶10} At the hospital, the victim was treated for six stab wounds and testified to being in significant pain. The wounds were sutured and the victim was released the same day. The victim explained he had difficulty using his left arm for at least a month after the assault and detailed several scars that resulted from the injuries.

{¶11} Garrett presented a different version of events in his defense. Both he and his mother testified. According to Garrett, on that day, he arrived home and pulled in the driveway. He observed his mother and niece in the doorway and saw the victim's girlfriend coming out of the house with R.C. Garret also noticed the victim was in the car which was parked in front of his mother's house. Garrett's mother and Garrett had relayed to the victim in the past that he was not welcome at or around the house.

{¶12} Garret went over to tell R.C. goodbye and to try to talk to the victim's girlfriend about the "situation" but she refused and grabbed R.C. back. Garrett was insistent that they needed to talk but the victim's girlfriend did not want to do so. At that point, the victim got out of the car and proceeded to walk towards Garrett and the victim's girlfriend. Garrett maintained that the argument occurred in his mother's yard, not near the car as the victim claimed. Garrett's mother testified that she could not hear what was being said, but did hear the victim "more or less" yelling and making arm gestures. According to Garrett, the victim became "amped" and then Garrett was yelling. The victim threw the first punch and then the two began fighting.

Garrett's mother saw Garrett hit the ground and then the victim was on top of Garrett punching him. According to Garrett, they were on the ground before Garrett pulled out his knife and began using it. Before he did so, Garrett testified that the victim "had the best of [him], to be honest, and [his] daughter was crying, [his] mom yelling * * * and the only thing [he could] think about, [was he could not] let this man beat [him] like this in front of [his] daughter[.]" Garrett indicated that the victim was "getting the best of [him]" but was not "beating the dog out of [him.]" Garrett acknowledged that, given their proximity to each other, Garrett was likely to cut the victim as Garrett was swinging the knife at the victim. Once the victim realized that he was being stabbed, the victim got up. Garrett also got up and his mother observed Garrett swinging his arms at the victim and then saw the victim run away. Garrett stood and watched the victim go. Garrett and his mother denied that Garrett pursued the victim. Garrett's mother noted that the victim fell twice as he was running away. As the victim was running away, Garrett's mother noticed that Garrett had a knife in his hand. Garrett's mother never saw the victim with a weapon. Garrett's only injuries were scratches, and he averred that the main thing that was hurt was his pride.

{¶13} Garrett also called 911 to report the stabbing and waited for police to arrive. When the police arrived, he showed the officers where the knife was, which was on the porch of his sister's house, and provided a statement. He told one of the officers that there had been an altercation and he had stabbed someone. Garrett was not immediately arrested, but was placed in a police car. The police did not observe any injuries on Garrett. Garrett's mother did not come outside and speak to the police when they came, in part because she was concerned about a warrant that she thought may have been issued against her; Garrett's mother acknowledged that she had four prior convictions for theft.

{¶14} Two officers proceeded to the hospital and took statements from the victim and his girlfriend. The victim's girlfriend told police that she and the victim went to the house to pick up R.C. and that Garrett wanted to have a conversation with the victim's girlfriend. The victim's girlfriend indicated that she did not want to do so in front of the child. Garrett put the child down and they started arguing. Then the victim got out of the car, Garrett got in the victim's face and started to punch and stab the victim. The victim got away and his girlfriend picked him up and took him to the hospital. After gathering and considering all of the statements, the decision was made to arrest Garrett.

{¶15} After a thorough and independent review of the record, we cannot say that the jury lost its way in finding Garrett guilty of felonious assault in violation of R.C. 2903.11(A)(1). While the jury was presented with conflicting evidence, "[w]e remain mindful that the jury had an opportunity to view the witnesses and was in the best position to assess the credibility of the evidence presented by the parties at trial." (Internal quotations and citations omitted.) *State v. Renaud*, 9th Dist. Summit No. 28439, 2017-Ohio-8218, ¶ 32. Moreover, "[t]his Court will not overturn the [] verdict[s] on a manifest weight of the evidence challenge simply because the jury chose to believe certain witnesses' testimony." (Internal quotations and citations omitted.) *Id.*

{¶16} There was evidence presented that Garrett struck the victim first and proceeded to stab him six times. The altercation continued even after the victim tried to flee. The victim's wounds required stitches and left scars. If the jury believed the victim's and the victim's girlfriend's version of events, the jury was not unreasonable in finding Garrett guilty of violating R.C. 2903.11(A)(1) and in rejecting his affirmative defense of self-defense. Even if the jury believed some of Garrett's testimony, the jury could have reasonably found that Garrett failed to establish he acted in self-defense. For example, in light of Garrett's testimony that "the only

thing [he could] think about[ was he could not] let this man beat [him] like this in front of [his] daughter," the jury could have found that Garrett failed to demonstrate that he "had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force[.]" *Walker,* 2017-Ohio-7236, at ¶ 6. As the elements of proving self-defense are cumulative, the failure to establish any one is fatal to proving the affirmative defense. *Id.* Accordingly, after a careful review of the record, we can only conclude that the jury did not lose its way and create a manifest miscarriage of justice in finding Garrett guilty of violating R.C. 2903.11(A)(1). *See Otten*, 33 Ohio App.3d at 340.

**{¶17}** Garrett's sole assignment of error is overruled.

III.

**{¶18}** Garrett's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JACLYN PALUMBO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.