[Cite as *State v. Walker*, 2021-Ohio-2037.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                              No. 109328

    v. :

DETTRICK WALKER, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 17, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-633490-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Blaise D. Thomas and Tasha Forchione,
Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Dettrick Walker appeals his conviction for felonious assault, along with an attendant three-year gun specification, stemming from his mortally shooting Victor Maar, Jr., with an illegally possessed handgun during an altercation

in Maar's home. The trial court sentenced Walker to an eight-year term of imprisonment to be served following the three-year term of imprisonment on a firearm specification. For the following reasons, we affirm.

{¶ 2} Walker, 18 years old at the time of the shooting, was in a relationship with Courtney Sprachmann, who was then 41 years old and who is also a codefendant. That relationship began three years earlier. Sprachmann moved into a property owned by Maar, having no other home available. Maar's extended family also lived at the property. Maar renovated homes for a living and hired Sprachmann sporadically. Maar prohibited Walker from being on any of his properties because Maar believed Walker had assaulted Sprachmann in the past based on visible injuries Sprachmann had sustained.

{¶ 3} On the day of the killing, Walker visited Sprachmann. Sprachmann and Walker were upstairs while the rest of the family was on the first floor watching football. Maar joined the family. Maar, aware of Walker's presence, eventually went upstairs to confront the couple and to tell Walker to leave the premises. Maar verbally confronted Walker, and the two began pushing each other, although the extent of the altercation is unclear because the rest of the family only heard the scuffle. Walker testified that he was punched several times in the face. Unsuccessful with getting Walker to leave, Maar returned to the living room.

{¶ 4} While Maar was at the foot of the stairs entering the living room, he was heard telling everyone that Walker "had to go" or words to that effect. Walker approached Maar from behind and, according to the witnesses, began shooting

immediately while descending the stairs with a backpack slung on his shoulder. Maar's blood was spattered on the wall going up the stairs. Walker continued to shoot as Maar was on the ground. In all, five shots were fired, all of which hit Maar. After Maar was shot, Maar's father grabbed for and tackled Walker into the fireplace. Walker freed himself from the scuffle and fled the scene.

{¶ 5} The medical examiner in part corroborated the eyewitness testimony that Maar's back was to Walker at some point during the shooting. The fatal gunshot was inflicted from behind, entering Maar's back and exiting his chest, piercing the aorta, the largest blood vessel in the body. Maar's death would have been within minutes, but Maar would have collapsed within seconds. Also, according to the medical examiner, there were no offensive wounds on Maar's hands or fists, indicating that Maar did not appear to punch anybody, although there is no dispute that Walker had marks on his face and body and lost some blood during the altercation. The extent of Walker's injuries was limited to a cut on his lip and some scratches or other cut marks on his arm and back. Walker did not seek medical attention, and four days after the altercation there were no visible signs of injury to Walker's face.

{¶ 6} Walker presented a different version of events. Although Walker never testified to being aware of Maar's prior instances of aggressive conduct, the trial court permitted the defense to delve into that area through the state's witnesses offering evidence of the victim's past conduct, over the state's objection. *Compare State v. Barnes*, 94 Ohio St.3d 21, 21, 759 N.E.2d 1240 (2002) (a defendant cannot

introduce evidence of specific instances of a victim's conduct to prove self-defense). According to Walker's trial testimony, Maar accosted him in the second-story bedroom and hurled racially charged invectives while beating Walker with punches and kicks. The ensuing "nonstop assault" carried the two from room to room upstairs and caused them to career into objects in the bedroom (the wall, the couch, and the dressers, which had a glass item among other objects sitting on them) and then to "tumble" down the stairs into the first-floor living room area where Maar's father held Walker to facilitate Maar's attack. As the state points out, crime-scene photos revealed no evidence of a prolonged physical altercation having occurred — the rooms were not in any disarray, and none of the objects on the dressers were dislodged.

{¶ 7} After being tossed into the fireplace in the living room by Maar and his father, Walker pulled a loaded firearm from his backpack, which had been loosely hung on his right shoulder during the entire episode with the handgun contained in an open pocket on the outside of the backpack. According to Walker, the backpack was at his feet when Maar entered the bedroom, but Walker was able to pick up the bag and sling it around one shoulder right before Maar threw the first punch.

{¶ 8} Walker then claims that after retrieving the firearm from the backpack, he released the trigger safety and fired five shots as Maar charged toward him, but that he stopped shooting once Maar fell to the floor — contradicting the state's evidence that Walker continued to fire the weapon while Maar was lying on

the ground and the fatal shot went through Maar's back. Although Walker claims to have shot all five rounds from the fireplace area, the investigation revealed a bullet defect in the wall above the fireplace, which would have been behind Walker if he fired his weapon from the fireplace area as he testified. Walker concedes he did not provide Maar any opportunity to cease the assault. Walker then fled the scene, tossing the firearm into an undisclosed dumpster near Maar's property.

{¶ 9} At trial, Walker testified that he was given the handgun by a friend, avoiding the implications of R.C. 2923.211(B) ("No person under twenty-one years of age shall purchase or attempt to purchase a handgun."). However, Walker did not, and could not under R.C. 2923.125(D)(1)(b), due to his age, possess a concealed handgun license such that he would have been permitted to conceal the loaded handgun in his backpack. Walker claimed to have illegally carried the weapon for safety, testifying to living in a high-crime neighborhood with his mother. Walker's mother disagreed with that characterization of their West 140th Street neighborhood, pitting Walker's credibility against that of his mother.

{¶ 10} The jury acquitted Walker of both murder counts, but found him guilty of felonious assault along with an attendant three-year firearm specification. The trial court imposed the maximum sentence of eight years in prison, to be served following the three-year term imposed on the firearm specification. This appeal timely followed in which Walker advances five assignments of error.

## I. Self-Defense

{¶ 11} In the first, third, and fourth assignments of error, Walker claims his conviction is either based on insufficient evidence or is against the weight of the evidence. All three of those claimed errors, however, rely on accepting Walker's testimony over that of the state's witnesses and will be treated accordingly. In reviewing a sufficiency challenge, "'[t]he relevant inquiry is whether, after viewing the evidence *in a light most favorable to the prosecution*, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis added.) *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Because Walker's argument focuses on his credibility as contrasted against the state's evidence, his claims are more appropriately considered under the weight-of-the evidence standard.

{¶ 12} A claim that a verdict is against the weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. In contrast to sufficiency of the evidence, "[w]eight of the evidence concerns the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264,

¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 13} Self-defense claims are generally an issue of credibility. If evidence presented at trial tends to support the conclusion "that the defendant used force against another in self-defense or in defense of another, the state must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another." *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49, citing R.C. 2901.05(B)(1). However, in light of the cumulative nature of the self-defense elements, the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden at trial. *Id.*, citing *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶ 55, and *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶ 14} In order to establish the inapplicability of self-defense, the state must demonstrate (1) that the defendant was at fault in creating the situation giving rise

to the affray; (2) that the defendant lacked a bona fide belief that he was in imminent danger of death or great bodily harm or that another means of escape from such danger existed negating the need for the use of deadly force; *or* (3) that the defendant violated a duty to retreat or avoid the danger. *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 46 (8th Dist.); *see also State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 258, quoting *Barnes*, 94 Ohio St.3d at 24, 759 N.E.2d 1240; *see also State v. Williams*, 1st Dist. Hamilton No. C 190380, 2020-Ohio-5245, ¶ 11, quoting *State v. Salaam*, 2015-Ohio-4552, 47 N.E.3d 495, ¶ 15 (1st Dist.), and *State v. Browner*, 1st Dist. Hamilton No. C-100247, 2010 Ohio App. LEXIS 5260, ¶ 8 (Dec. 15, 2010). With respect to the duty-to-retreat element, Walker did not invoke R.C. 2901.09. Under what is colloquially known as the Castle Doctrine as it existed before April 6, 2021, "a person is presumed to have acted in self-defense when attempting to expel or expelling another from their home who is unlawfully present." *State v. Kozlosky*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶ 25 (8th Dist.). The doctrine obviates the "duty to retreat" element of self-defense. *Id.* Although the recently enacted version of R.C. 2901.09 expanded the defense to include any area where the defendant is lawfully entitled to be and the defense is no longer limited to one's residence, that version is not applicable to the current case based on the date of enactment. Although Walker and the state discuss Walker's status as a trespasser or invitee at great length, Walker's status is irrelevant in light of the failure to raise the Castle Doctrine or the recent

amendments to that statutory section in this case. There is no dispute that Walker had a duty to retreat.

{¶ 15} Nevertheless, self-defense is not absolute. There are "'limitations to the application of self-defense,' and the defense 'is not available unless' there is evidence demonstrating 'that the force used to repel the danger was not more than the situation reasonably demanded.'" *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 52-53, quoting *State v. Johnson*, 6th Dist. Lucas No. L-08-1325, 2009-Ohio-3500, ¶ 12. It has therefore been concluded that "'the force used to defend must be objectively necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended.'" *Id.*, quoting *Johnson* and *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 93, 590 N.E.2d 411 (10th Dist.1990). Self-defense is not justified when an offender uses "a greater degree of force than is necessary under all the circumstances." *Id.,* citing *Johnson* and *State v. McLeod*, 82 Ohio App. 155, 157, 80 N.E.2d 699 (9th Dist.1948).

{¶ 16} In *Zafar*, for example, the defendant was a clerk at a convenience store who entered what started as a verbal altercation with the victim over a 50-cent surcharge for using a debit card. *Id.* at ¶ 19. The defendant testified that the victim threatened to kill him, and when another store clerk approached the victim, the victim began punching the other clerk. *Id.* at ¶ 21. At that point, the defendant began hitting the victim with an aluminum baseball bat, prevented him from leaving the store, and continued attacking despite the fact that the victim was subdued on the floor. *Id.* at ¶ 6-9. Even if the initial altercation placed the defendant in fear of his

life based on the victim's threats, it was concluded that attacking the victim with the deadly weapon while he offered little to no resistance exceeded the force necessary to removing the danger. *Id.* at ¶ 53. Thus, the amount of force used must coincide with the danger posed.

{¶ 17} In this case, the evidence is conflicting as to how Walker shot Maar. According to Walker, he fired the weapon from the fireplace area only as Maar was charging at him after both had tumbled down the stairs while the assault was ongoing. According to the witnesses, and in part the medical examiner's and investigative evidence, Walker shot Maar from behind as Walker descended the stairs shortly after Maar had returned to the first-floor area during a break in the physical altercation. What is undisputed, however, is that although Maar initiated the altercation, no one in the house was otherwise armed and Walker did not sustain extensive injuries from Maar's attack.

{¶ 18} Essentially, Walker is asking this court to believe his version of events over the eyewitnesses and the state's forensic evidence. "[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Lipkins*, 2017-Ohio-4085, 92 N.E.3d 82, ¶ 39 (10th Dist.), citing *State v. Gale*, 10th Dist. Franklin No. 05AP-708, 2006-Ohio-1523, ¶ 19.

{¶ 19} Here, there is ample evidence that Walker fatally shot Maar while his back was to Walker and at a time when Walker was not in danger from any assault. If the state's evidence is believed, and Walker provides no credible basis to discount

such evidence, Walker was not being assaulted and could have remained upstairs and called for police assistance to report the assault with one of the three mobile phones that he and Sprachmann had available at the time. Since Walker was armed, nothing prevented him from taking a defensive stand upstairs while the danger subsided. Instead, Walker voluntarily approached Maar and began shooting. Generally, a defendant, having willingly advanced toward a volatile situation cannot rely on the affirmative defense of self-defense. *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 15.

{¶ 20} In effect, Walker escalated the altercation by voluntarily advancing and using a deadly weapon in a situation in which the objective evidence does not conclusively establish that Walker was being beaten to the point that his life was endangered. *State v. Kendricks*, 10th Dist. Franklin Nos. 10AP-114 and 10AP-115, 2010-Ohio-6041, ¶ 41. Even if Walker was privileged to defend himself from the initial attack, he exceeded the force necessary to repel the attack by using a deadly weapon against an unarmed man during a break in the altercation. The jury was free to consider such conduct in weighing the evidence. *Id.* Further, Walker fired several times and only one shot turned out to be deadly. The order in which the bullets struck Maar is unknown, but shooting multiple times, including when Maar was on the ground and no longer continuing the alleged attack, could also be considered as exceeding the force necessary to repel the bare-handed attack. *See, e.g., State v. Viney*, 4th Dist. Ross No. 1762, 1992 Ohio App. LEXIS 2404, 9 (May 5, 1992) (the jury was free to consider the several stab wounds as being in excess of

what was necessary to repel the attack); *see also State v. Garrett*, 9th Dist. Summit No. 28638, 2018-Ohio-1368, ¶ 16 (the jury could reasonably accept the state's version of the conflicting evidence that the defendant did not act in self-defense).

{¶ 21} A conviction will be reversed as being against the manifest weight of the evidence only in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.,* quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, and *Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Walker claims that his version of events is more credible than the state's; however, Walker's testimony is at odds with the forensic evidence that demonstrates Maar's being shot in the back and while on the ground. Walker provided no explanation for how Maar could have been shot in that manner throughout his testimony, which unambiguously provided that Walker only shot as Maar charged Walker. Further, his claim as to the extent of the struggle, being tossed around rooms and into objects in Sprachmann's room, was not corroborated by the crime-scene photos that depicted no damage to any items on dressers that the men collided with or any other signs of disarray. In short, his version of the events is not inherently more credible than the evidence offered by the state. *See, e.g., State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 128 (defendant failed to demonstrate that the state's evidence was inherently unreliable, and therefore, the conviction was not against the weight of the evidence). This is not that exceptional case warranting appellate intervention.

## II. Inconsistency in the Verdict

{¶ 22} On this point, however, Walker claims that the jury must necessarily be presumed to have concluded that he acted in self-defense since Walker was acquitted of murder, and therefore, the felonious assault conviction should be reversed. According to Walker, the acquittal of the murder charges necessarily proves that the jury believed that Walker acted in self-defense, and therefore, that conclusion should have transferred to the separate felonious assault charge. The state, on the other hand, maintains that the jury could have acquitted based on its conclusion that the state failed to present evidence substantiating the elements of murder. We need not consider either argument because speculation as to the jury's thought process is not permissible. *State v. Pruett*, 8th Dist. Cuyahoga No. 78094, 2001 Ohio App. LEXIS 1705, 4 (Apr. 12, 2001), citing *State v. Lovejoy*, 79 Ohio St.3d 440, 444-445, 683 N.E.2d 1112 (1997). "'Courts have always resisted inquiring into a jury's thought processes * * *; through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.'" *Lovejoy* at 445, quoting *United States v. Powell*, 469 U.S. 57, 66-67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

{¶ 23} Walker is essentially claiming that the finding of guilt on the felonious assault charge is inconsistent with the acquittal on the murder charges. *State v. Daws*, 2d Dist. Montgomery No. 18686, 2001-Ohio-1549. It has long been held that "'consistency in the verdict is not necessary.'" *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 81-82, quoting *Powell* at 62, and *Dunn v.*

*United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Each count of an indictment is considered a separate indictment. *Id.* It is possible "that the [trier of fact], convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the remaining offenses." *Id.,* citing *Powell.*

{¶ 24} Thus, even if the jury's verdict as between the separate counts of the indictment were considered to be inconsistent, that does not constitute reversible error. We find no merit to Walker's argument.

## III.    Ineffective Assistance of Counsel

{¶ 25} In the second assignment of error, Walker claims that his trial counsel rendered ineffective assistance by failing to submit a separate verdict form on self-defense. According to Walker, the jury must have mistakenly applied the self-defense instruction only to the murder charges and not the felonious assault charge based on the verdict, and the jury form would have revealed this mistake.

{¶ 26} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and second, that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 391, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, even if the error is obvious, it must have affected substantial rights, and the Ohio Supreme Court has "'interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the

trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240. Along these lines, a defendant is "required to demonstrate a reasonable probability that the error resulted in prejudice * * *." *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

{¶ 27} Walker has not presented any authority in support of his claim that trial counsel must present verdict forms when self-defense is raised. S*tate v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 99. In *Jones*, this argument was rejected for this very reason. *Id.* Importantly, Walker does not claim any error with respect to the jury instructions, which unambiguously instructed the jurors that the self-defense claim applied to each and every count. Tr. 1272:16-23 ("if you find that the State failed to prove, beyond a reasonable doubt, that self-defense does not apply you must find the defendant not guilty of the *offense or offenses charged* according to your findings." (Emphasis added.)). The jury is presumed to have followed the court's instructions. *State v. Graham*, Slip Opinion No. 2020-Ohio-6700, ¶ 135, citing *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). As a result, Walker has failed to demonstrate that the result of the trial would have been different, and the second assignment of error is overruled.

{¶ 28} We do note, however, that the standard jury instruction for self-defense is in need of updating to reflect the current law that places the burden on the state to disprove self-defense. Traditionally, the elements of self-defense were considered cumulative — the defendant must prove each element in order to avail

himself of the defense. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 73. The standard instruction provides the self-defense instruction in the conjunctive to reflect the cumulative nature of the defense. *See, e.g.*, OJI CR 421.19. Under R.C. 2901.05, the state now bears the burden of disproving self-defense if appropriately raised, but that burden is limited to disproving any one element. *Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, at ¶ 46 (8th Dist.); *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶ 49-50. In light of the burden shifting to the state, the instruction should clarify the difference between the state's and the defendant's respective burden. That clarification was lacking in this case. In response to a question from the jury during trial, the trial court indicated that the state must disprove all three elements based on both parties agreeing to the state of the law. This concession by the state was in error. Although the state need only disprove one element, in order to be entitled to a self-defense verdict, there must be evidence satisfying all elements of self-defense in order for the defendant to prevail. Moving forward, courts and parties should be aware of this distinction. In this case, however, the jury found Walker guilty of felonious assault, so any error with respect to the instruction from the state's perspective is beyond the scope of this appeal.

## IV. Sentencing

{¶ 29} Finally, in the fifth assignment of error, Walker claims that his sentence imposed on the felony of the second degree, felonious assault, is not

supported by the record. We are statutorily precluded from considering that argument.

{¶ 30} In order to appeal the imposed sentence, a defendant must first demonstrate that the sentence is reviewable under one of the provisions of R.C. 2953.08(A). *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 10 ("A defendant's right to appeal a sentence is based on specific grounds stated in R.C. 2953.08(A)."). The sentence in this case is an eight-year sentence on the underlying second-degree felony offense, the maximum possible sentence. Under R.C. 2953.08(A)(1), a maximum sentence imposed on an individual count can be challenged in the direct appeal.

{¶ 31} Notwithstanding, Walker contends that the Ohio Supreme Court recognized an offender's ability to challenge a sentence imposed solely after consideration of the factors under R.C. 2929.11 and 2929.12 under R.C. 2953.08(G), that is, that a sentence may be reversed if the sentencing factors are not clearly and convincingly supported by the record. At one time, Ohio law indeed reflected this deferential review. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. In *Marcum*, the Ohio Supreme Court noted that "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under" the deferential standard of review provided under R.C. 2953.08(G). *Id.* at ¶ 23.

{¶ 32} Under a more recent pronouncement, however, the Ohio Supreme Court's conclusion in *Marcum* was deemed dicta. Generally, dicta may be relied upon as persuasive authority. *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, 144 N.E.3d 378, ¶ 27. But in this particular case, the Ohio Supreme Court deemed it reversible error to rely on *Marcum* for the proposition that an appellate court may review whether the record clearly and convincingly supports the sentencing factors and consideration under R.C. 2929.11 and 2929.12. *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 27. "R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a) and [o]nly R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified." *Id.* at ¶ 28. Accordingly, under R.C. 2953.08(G)(2), an appellate court may reverse or modify a sentence only if the appellate court clearly and convincingly finds that the record does not support the findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or if the sentence is contrary to law. R.C. 2953.08(G) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones*, at ¶ 39.

{¶ 33} Even though R.C. 2929.14(A) permits appellate review of an individual sentence imposed solely following consideration of R.C. 2929.11 and 2929.12, we have no basis to reverse the sentence because none of the relevant findings under R.C. 2953.08(G) were necessary to that particular sentence. And further, there is no argument in this case that the sentence is contrary to law.

Regardless of this omission, we note that a "sentence is contrary to law if it falls outside the statutory range for the offense or if the sentencing court fails to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Pate*, 8th Dist. Cuyahoga No. 109758, 2021-Ohio-1089, ¶ 3, citing *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. Walker concedes that his sentence is not outside the statutory range and the trial court expressly considered the sentencing factors as required by law. The fifth and final assigned error is overruled.

{¶ 34} We affirm.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EMANUELLA D. GROVES, J., CONCURS;
MARY J. BOYLE, A.J., CONCURS IN JUDGMENT ONLY